UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JOHN LANDRY** and <br> **THERESE LANDRY**, <br><br> Plaintiffs, <br><br> v. <br><br> **MAINE MEDICAL CENTER,** <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) NO.: <br> ) <br> ) <br> ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, John and Therese Landry, by and through undersigned counsel, and assert the following cause of action against the Maine Medical Center.

## PARTIES AND JURISDICTION

1. Plaintiff John Landry is a resident of the City of Venice, County of Sarasota, and State of Florida.

2. Plaintiff Therese Landry, John Landry's wife, is also a resident of the City of Venice, County of Sarasota, and State of Florida.

3. Defendant Maine Medical Center is a Maine non-profit Corporation with a principal place of business in Portland, Maine.

4. Nurse Travis Caron and the other nurses caring for John Landry during the time period alleged herein are agents and/or employees of Maine Medical Center.

5. The anesthesiology department, for purposes of this action, was acting as an agent of Maine Medical Center at all times relevant to the claims asserted herein.

6.       The pharmacy department, for purposes of this action, was acting as an agent of Maine Medical Center at all times relevant to the claims asserted herein.

7.       The matter in controversy exceeds $75,000.00.

8.       Federal jurisdiction is proper pursuant to 28 U.S.C. § 1332.

## THE MAINE HEALTH SECURITY ACT

9.       Pursuant to 24 M.R.S. § 2903, Plaintiffs filed a notice of claim against Maine Medical Center on or about January 12, 2009.

10.      In accordance with the Maine Health Security Act, a panel hearing was commenced on April 16, 2010.

11.      The panel entered unanimous findings as to both negligence and causation against Maine Medical Center, pursuant to 24 M.R.S. § 2855.

## BACKGROUND FACTS

12.      On or about June 17, 2007, John Landry suffered a heart attack and was transported to Southern Maine Medical Center.

13.      During this hospital visit, it was discovered that Mr. Landry had an upper gastrointestinal ("GI") bleed.

14.      Mr. Landry was therefore transferred to Maine Medical Center for evaluation of his GI bleed by Dr. Paul Sweeney.

15.      Once the GI bleed resolved, Mr. Landry consulted with Dr. Reed Quinn for treatment of his coronary artery disease.

16.      Dr. Reed Quinn scheduled Mr. Landry for a coronary artery bypass grafting (CABG) procedure at Maine Medical Center on August 27, 2007.

17.     Mr. Landry underwent a successful CABG procedure, performed by Dr. Quinn, on the morning of August 27, 2007.

18.     On the evening of August 27, 2007, Mr. Landry looked and felt well; at one point he was sitting in his chair and discussion was had that he would be transferred soon out of the cardio-thoracic intensive care unit (CTICU).

19.     Mr. Landry's family left Maine Medical Center on the evening of August 27, 2007 feeling relieved that he had such a successful outcome from the CABG procedure.

20.     As part of Maine Medical Center's standing order set for CABG patients, Dr. Quinn ordered 100 mg of Nitroprusside for Mr. Landry, to be filled by the pharmacy and delivered to Mr. Landry's room in the event that his blood pressure was high following the CABG procedure.

21.     Dr. Quinn also entered a standing order for Phenylephrine (hereinafter referred to by its brand name, Neo-Synephrine), a vasoconstrictor, to be administered by central line in the event that Mr. Landry was hypotensive upon returning from the operating room.

22.     As is common among open heart surgery patients, Mr. Landry's blood pressure was low upon returning to recovery from the operating room on the afternoon of August 27, 2007.

23.     Accordingly, the standing order for Neo-Synephrine was called in to the pharmacy and Mr. Landry received a continuous intravenous ("IV") infusion of the medication starting at 1:00 p.m. on August 27th.

24.     Mr. Landry was weaned off the Neo-Synephrine drip around midnight on August 28th by Nurse Travis Caron.

25. Over the next few hours, Mr. Landry was given Albumin in an effort to stabilize his pressures.

26. At around 5:00 a.m. on August 28th, the physician's assistant on duty gave Nurse Caron a verbal order to restart Mr. Landry's Neo-Synephrine drip because his blood pressure remained low.

27. Within 5 minutes of restarting the drip, the IV alarm sounded and Nurse Caron had difficulty troubleshooting the problem.

28. Nurse Caron decided to dispose of the old IV bag and tubing that had been hanging since before midnight and hang a new bag of what he thought was Neo-Synephrine.

29. Instead of grabbing and hanging a bag of Neo-Synephrine, Nurse Caron mistakenly hung a bag of Nitroprusside.

30. The Nitroprusside caused Mr. Landry's blood pressure to drop further, the exact opposite effect of what was intended by the order to restart Neo-Synephrine.

31. The standing order for Nitroprusside never should have been called in by the staff, filled by the pharmacy, or delivered to Mr. Landry's bedside.

32. Furthermore, for reasons unknown, the erroneously delivered bag of Nitroprusside had appeared in Mr. Landry's room earlier in the afternoon on August 27th, was removed by the nurse on duty, and then mistakenly returned to Mr. Landry's room.

33. Maine Medical Center's institutional policies and procedures provide that Neo-Synephrine is a "high-alert" medication that requires a "double-check" procedure prior to administration of the medication.

34. Nurse Caron did not check the name of the bag of IV medication before hanging it.

35. Additionally, the Maine Medical Center nursing staff is taught during orientation the institutional policy of checking the "5 Rs of medication administration," which consist of the: Right medication, Right dose, Right route, Right time, and Right patient.

36. These above-referenced policies are consistent with the standard of care for medication administration and failure to follow them constitutes a breach of the standard of care.

37. After being administered the wrong medication, Mr. Landry's blood pressure continued to plummet and he became acidotic; his heart collapsed and he was returned to the operating room for resuscitation and exploratory surgery to determine whether there was a bleed or other complication from the CABG procedure.

38. Upon transfer to the operating room and beginning anesthesia, Maine Medical Center's staff and agents should have checked his medications.

39. Dr. Quinn performed an exploratory surgery of Mr. Landry's chest. Finding no source for the bleeding, he called Dr. MacGillivray in to perform an exploratory surgery of Mr. Landry's abdomen to see if this explained his low blood pressure.

40. Maine Medical Center and/or its agents failed to check Mr. Landry's medication during, before, or after these surgeries, which concluded by 9:01 a.m. on August 28, 2007.

41. Finally, at around 11:00 a.m. on the 28th, a nurse in the recovery room discovered that the wrong medication was running and that this was the cause of Mr. Landry's near fatal hypotension.

42. After being informed of the medication error, Mr. Landry's family was finally allowed to see him.

43. Mr. Landry's appearance after the exploratory surgeries was far worse than after his CABG procedure; he was immensely swollen and blue, and this presentation upset Mrs.

Landry so profoundly that she fainted and had to be admitted to Maine Medical Center for several hours.

44. As a result of the two unnecessary exploratory surgeries occasioned by this medication error, Mr. Landry had to remain in intensive care longer than expected.

45. In addition, Mr. Landry had to complete an 8-day post-surgical rehabilitation program at St. Andre's, which was never part of his post-CABG rehabilitation plan.

46. Mr. Landry suffered significant pain, scarring, fear, and extended convalescence as a result of Maine Medical Center's medication error, and he continues to have lasting effects from these two surgeries to this day.

## COUNT I
### (Negligence)

47. Plaintiffs John and Therese Landry repeat and reallege each and every allegation contained in Paragraphs 1 through 46 as if fully set forth herein.

48. At all times herein relevant, Defendant Maine Medical Center held itself out as being capable of rendering proper critical care treatment, including without limitation medication administration, to a patient such as John Landry.

49. Defendant and/or its agents and employees undertook to render proper medical care and assistance to John Landry and it was therefore the duty of Defendant to exercise reasonable care to see that Mr. Landry obtained proper medical treatment and attention.

50. Defendant and/or its agents and employees did not provide reasonable care and skill in treating, diagnosing, monitoring, and administering medications to Plaintiff John Landry.

51. As a direct and proximate result of Defendant's breach of this duty, Plaintiffs suffered harm in the form of pain, emotional distress, and extended convalescence following an otherwise successful CABG procedure.

WHEREFORE, Plaintiffs demand judgment against Defendant Maine Medical Center for such damages as are reasonable, including punitive damages, together with interest and costs and such other and further relief as this Court deems appropriate.

## COUNT II
### (Loss of Consortium)

52.     Plaintiffs John and Therese Landry repeat and reallege each and every allegation contained in Paragraphs 1 through 51 as if fully set forth herein.

53.     As a result of Maine Medical Center's negligence and the resulting harm to John Landry, Plaintiff Therese Landry has suffered the loss of care, comfort, society and companionship of her husband.

WHEREFORE, Plaintiffs demand judgment against Defendant Maine Medical Center for such damages as are reasonable, including punitive damages, together with interest and costs and such other and further relief as this Court deems appropriate.

## TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all matters so triable by jury as declared by the Constitution of the State of Maine or as given by statute.

Dated at Portland, Maine, this 17th day of June, 2010.

/s/ Terrence D. Garmey
Terrence D. Garmey, Esquire (Bar No. 1656)
Laura H. White, Esquire (Bar No. 4025)
Attorneys for Plaintiffs John and Therese Landry

SMITH ELLIOTT SMITH & GARMEY, P.A.
7 Custom House Street, 5th Floor
PO Box 442
Portland, ME  04112-0442
(207) 774-3199